**EXHIBIT "A"**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

**SEP 30 2014**

Sherri R. Carter, Executive Officer/Clerk

By Y. Husen, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BANK OF AMERICA, NATIONAL ASSOCIATION;

Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DANIEL DWAYNE GORDEY, an individual,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>Torrance<br>825 Maple Avenue, Torrance, CA 90503 | CASE NUMBER:<br>*(Número del Caso):*<br>070133 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gary Saunders, Esq.   (Bar # 144385)                              Fax No.: (951) 270-5250
SAUNDERS LAW GROUP, LTD                                         Phone No.: (951) 272-9114
1891 California Avenue, Suite 102, Corona, CA 92881

DATE:   **SEP 30 2014**     Sherri R. Carter     Clerk, by   Y. Husen     , Deputy
*(Fecha)*                                        *(Secretario)*                        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):* *Select Portfolio Servicing, Inc.*
3. ☒ on behalf of *(specify):*

   under: ☒ CCP 416.10 (corporation)                     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)              ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)       ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>LexisNexis® Automated California Judicial Council Forms |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Gordey v. Bank of America, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-56, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-56; QUALITY LOAN SERVICE CORPORATION; SELECT PORTFOLIO SERVICING, INC; and DOES 1 - 10, inclusive,

Page 2 of 2

Page 1 of 1

## ADDITIONAL PARTIES ATTACHMENT
**Attachment to Summons**

*LexisNexis® Automated California Judicial Council Forms*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State number, and address):* | FOR COURT USE ONLY |
|---|---|
| Gary Saunders, Esq.    (Bar # 144385)<br>SAUNDERS LAW GROUP, LTD<br>1891 California Avenue, Suite 102<br>Corona, CA 92881<br>TELEPHONE NO.: (951) 272-9114    FAX NO.: (951) 270-5250<br>ATTORNEY FOR *(Name):* Daniel Dwayne Gordey, Plaintiff | **CONFORMED COPY**<br>**ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>**SEP 30 2014**<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By **Y. Husen,** Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 825 Maple Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Torrance 90503
BRANCH NAME: Torrance

CASE NAME:
        Gordey v. Bank of America, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>YC070133 |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [X] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [ ] Large number of separately represented parties
   - b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [ ] Substantial amount of documentary evidence
   - d. [ ] Large number of witnesses
   - e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[X] monetary  b.[X] nonmonetary; declaratory or injunctive relief  c.[X] punitive
4. Number of causes of action *(specify):* FIVE (5)
5. This case [ ] is  [X] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 25, 2014

Gary Saunders, Esq.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
 Medical Malpractice– Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
 Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
 Negligent Breach of Contract/ Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment (*non-domestic relations*)
 Sister State Judgment
 Administrative Agency Award (*not unpaid taxes*)
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
 Declaratory Relief Only
 Injunctive Relief Only (*non-harassment*)
 Mechanics Lien
 Other Commercial Complaint Case (*non-tort/non-complex*)
 Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

*LexisNexis® Automated California Judicial Council Forms*

| SHORT TITLE: Gordey v. Bank of America, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 3-5   ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> ### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

SEP/29/2014/MON 01:42 PM SAUNDERS LAW GROUP FAX No. 951 270 5250 P. 003

| SHORT TITLE: Gordey v. Bank of America, et al. | CASE NUMBER |
| --- | --- |

| | | A CIVIL CASE COVER SHEET Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
| --- | --- | --- | --- | --- |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Business Tort (07) | ☐ A6029 | Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 | Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 | Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 | Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 | Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 | Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 | Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Employment | Wrongful Termination (36) | ☐ A6037 | Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 | Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 | Labor Commissioner Appeals | 10. |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 | Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 | Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 | Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 | Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002 | Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012 | Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 | Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 | Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031 | Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 | Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 | Eminent Domain/Condemnation       Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 | Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 | Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 | Quiet Title | 2., 6. |
| | | ☑ A6060 | Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 | Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 | Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F | Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 | Unlawful Detainer-Drugs | 2., 6. |

SEP/29/2014/MON 01:43 PM   SAUNDERS LAW GROUP       FAX No. 951 270 5250        P. 004

| SHORT TITLE: Gordey v. Bank of America, et al. | CASE NUMBER |
|---|---|

| | | A CIVIL Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|---|
| **Judicial Review** | | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 8. |
| | | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | | ☐ A6190  Election Contest | 2. |
| | | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | | ☐ A6100  Other Civil Petition | 2., 9. |

| SHORT TITLE: Gordey v. Bank of America, et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON:  Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.  ☐1. ☒2. ☐3. ☐4. ☐5. ☒6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 24719 Via Valmonte |
|---|---|
| CITY: Torrance | STATE: CA | ZIP CODE: 90505 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Torrance___ courthouse In the ___Southwest___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 9/29/2014

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 30 2014

Sherri R. Carter, Executive Officer/Clerk

By Y. Husen, Deputy

**COURTHOUSE ADDRESS:** 825 MAPLE AVENUE, TORRANCE, CA 90503

**PLAINTIFF:** GURDEY

**DEFENDANT:** B of A

**CASE NUMBER:** YC 070133

## NOTICE OF CASE MANAGEMENT CONFERENCE

**TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:**

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 3-9-15 | Time: 8:30 AM | Dept: B |

**NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: _____ SEP 30 2014 _____                    STUART M. RICE
                                                   Judicial Officer

---

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☑ by personally giving the party notice upon filing of the complaint.

SHERRI R. CARTER Executive/Officer Clerk

Dated: _____ SEP 30 2014 _____          By _____
                                            Y. Husen
                                            Deputy Clerk

## NOTICE OF
## CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730

LASC Local Rules, Chapter Seven

Gary S. Saunders, Esq. (SBN: 144385)
SAUNDERS LAW GROUP, LTD
1891 California Ave., Ste. 102
Corona, CA 92881
Tel. (951) 272-9114
Fax (951) 270-5250

Attorney for Plaintiff,
DANIEL DWAYNE GORDEY

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**SEP 30 2014**

Sherri R. Carter, Executive Officer/Clerk

By **Y. Husen**, Deputy

CASE ASSIGNED FOR
ALL PURPOSES TO
Judge **STUART M. RICE**
Dept. _____ Div._____

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

DANIEL DWAYNE GORDEY, an individual,

Plaintiff,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-56, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-56; QUALITY LOAN SERVICE CORPORATION; SELECT PORTFOLIO SERVICING, INC; and DOES 1 – 10, inclusive,

Defendants.

CASE NO: **YC070133**

COMPLAINT FOR:

1. INTENTIONAL MISREPRESENTATION;
2. NEGLIGENT MISPRESENTATION;
3. VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING;
4. PROMISSORY ESTOPPEL;
5. VIOLATION OF BUSINESS AND PROFESSIONS CODE 17200.

**PLAINTIFF DEMANDS A JURY TRIAL**

1.    Plaintiff DANIEL DWAYNE GORDEY, an individual, files this complaint against

Defendants BANK OF AMERICA, NATIONAL ASSOCIATION; THE BANK OF NEW YORK

1

PLAINTIFF'S VERIFIED COMPLAINT

MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS

OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-56, MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2005-56; QUALITY LOAN SERVICE CORPORATION; SELECT

PORTFOLIO SERVICING, INC; and DOES 1 – 10, inclusive, for its intentional and systematic failure

to provide a permanent loan modification and its unfair and unlawful foreclosure practices that are

deceptive, immoral, unscrupulous, unfair and oppressive under California law.

<u>**PARTIES**</u>

2.      Plaintiff Daniel Dwayne Gordey, is, and at all relevant times, was a resident of Los

Angeles County, California, residing at Subject Property, APN #7534-033-049, particularly 24719 Via

Valmonte, Torrance, CA 90505, legally described as:

> LOTS 13 AND 14 IN BLOCK 14 OF WALTERIA TRACT, IN THE CITY OF
> TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER
> MAP RECORDED IN BOOK 17 PAGES 55 AND 56 OF MISCELLANEOUS
> RECORDS, IN THE OFFICE OF THE COUNTY RECORDDER OF SAID COUNTY.

> TOGETHER WITH THAT PORTION OF MESA STREET, (NOW KNOWN AS DE
> LAS TORTUGAS) LYING NORTHEASTERLY OF SAID LAND, AS VACATED BY
> RESOLUTION NO. 65-122 BY THE CITY COUNCIL OF THE CITY OF
> TORRANCE, AND RECORDED JUNE 25, 1965 AS INSTRUMENT NO. 5301.

> EXCEPT THOSE PORTIONS OF SAID LOTS LYING SOUTHWESTERLY OF THE
> NORTHEASTERLY LINE OF HAWTHORNE AVENUE 60 FEET WIDE AS
> DESCRIBED IN THE DEED OF THE COUNTY OF LOS ANGELES, RECORDED
> IN BOOK 3423 PAGE 372, OFFICIAL RECORDS.

> PARCEL NO. 2: NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS,
> EGRESS, USE AND ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT,
> MAINTENANCE, REPAIRS AND FOR OTHER PURPOSES, ALL AS DESCRIBED
> IN THE DECLARATION AND SUPPLEMENTAL DECLARATION.

3.      Defendant Bank of America, National Association ("BANA") is a national banking

association with its principal place of business in North Carolina. BANA conducts, and at all times

herein mentioned, conducted business in Los Angeles County, California. Based upon information

2

and belief Countrywide Home Loans, Inc., (CHL) the loan originator merged with BAC Home Loan

Servicing, LP, which in turn merged with Bank of America. Thus, CHL and BANA are one and the

same and BANA is liable for any and all of CHL's conduct alleged herein. BANA conducts, and at all

times mentioned herein conducted, business in Los Angeles County, California.

4.      Defendant The Bank of New York Mellon fka The Bank of New York, as Trustee for

the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-56, Mortgage Pass-Through

Certificates, Series 2005-56. The Bank of New York conducts, and at all times mentioned, conducted

business in Los Angeles County, California and as a consequence of its actions The Bank of New York

has submitted itself to and is within the personam jurisdiction of this court. The trust's CIK number is

0001340628 and the Securities and Exchange Commission (SEC) file number is 333-125902-24. The

Pooling and Servicing Agreement is dated September 1, 2005.

5.      The corpus of the Trust allegedly consists of a pool of residential mortgage notes

allegedly secured by liens on residential real estate. Plaintiff is informed and believes and therefore

alleges that the Trust has no officers or directors and no continuing duties other than to hold assets and

to issue the series of certificates of investment.

6.      Defendant Quality Loan Service Corporation ("Quality") is the alleged substitute

trustee. Its principal place of business is in San Diego, California.  Quality conducts, and at all times

herein mentioned, conducted business in Los Angeles County, California.

7.      Defendant Select Portfolio Servicing, Inc. ("SPS") is the alleged servicer. Its principal

place of business is in Salt Lake City, Utah.  SPS conducts, and at all times herein mentioned,

conducted business in Los Angeles County, California.

8.      The true names and capacities, whether individual, corporate  (including officers and

directors thereof), associate or otherwise of Defendants sued herein as DOES 1 through 10, inclusive,

3

are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff are informed, believed and allege that each Defendant designated as a DOE is involved in or is in some manner responsible as a principal, beneficiary, agent, dual agent, co-conspirator, joint venturer, alter ego, third party beneficiary, or otherwise, for the agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff.

9.      Plaintiff requests that when the true names and, capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

10.     Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein.  Despite exercising reasonable diligence, Plaintiff could not have discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein.

11.     At all relevant times, Defendants engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint.

12.     In the alternative, Defendants should be estopped from relying on any statutes of limitations.  Defendants have been under a continuing duty to disclose the true character, nature, and quality of their financial services and debt collection practices.  Defendants owed Plaintiff an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

## JURISDICTION AND VENUE

13.     Jurisdiction of this Court arises under *California Code of Civil Procedure §410.10 et seq.* The California Superior Court has jurisdiction over this action pursuant to *California Constitution Article VI §10*, which grants the Superior Court "original jurisdiction in all causes except those given

by statute to other trial courts." No other basis of jurisdiction is implied in this case, which presents California state law claims regarding California real estate transactions conducted by California based entities.

14.     Venue is proper in this Court because defendants' liability to Plaintiff arose within the jurisdictional region of this Court.

15.     Defendants herein purposefully directed their activities to the State of California and consummated a transaction with a resident of the State of California, Plaintiff herein. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Los Angeles, out of which this action arises and which forms the basis of this action.

## GENERAL AND FACTUAL ALLEGATIONS

16.     This action is brought against Defendants, who engaged in false advertising and unfair competition in the marketing and origination of residential mortgage loans.

17.     Countrywide attempted to generate as many mortgage loans as possible for resale on the secondary mortgage market. The goal for lenders such as Countrywide was not only to originate high mortgage loan volumes but also to originate loans with above-market interest rates and other terms which would attract premium prices on the secondary market.

18.     In 2004, in an effort to maximize Countrywide's profits, Defendants set out to In 2004, in an effort to maximize Countrywide's profits, Defendants set out to double Countrywide's share of the national mortgage market to 30% through a deceptive scheme to mass produce loans for sale on the secondary market. Defendants viewed borrowers as nothing more than the means for producing more loans, originating loans with little or no regard to borrowers' long-term ability to afford them and to sustain homeownership. Countrywide adopted a corporate culture of writing as many mortgage loans as possible, at the highest interest rates and fees possible.

PLAINTIFF'S VERIFIED COMPLAINT

19.     Countrywide  implemented this deceptive scheme through misleading marketing practices designed to sell risky and costly loans to homeowners, the terms and dangers of which they did not understand, including by (a) advertising that it was the nation's largest lender and could be trusted by consumers; (b) encouraging borrowers to refinance or obtain purchase money financing with complicated mortgage instruments like hybrid adjustable rate mortgages or payment option adjustable rate mortgages that were difficult for consumers to understand; (c) marketing these complex loan products to consumers by emphasizing the very low initial "teaser" or "fixed" rates while obfuscating or misrepresenting the later steep monthly payments and interest rate increases or .risk of negative amortization; and (d) routinely soliciting borrowers to refinance only a few months after Countywide or the loan brokers with whom it had "business partnerships" had sold them loans.

20.     Countrywide's high-pressure sales environment also propelled loan officers to sell the riskiest types of loans, such as payment option and hybrid adjustable rate mortgages, because loan officers could easily sell them by deceptively focusing borrowers' attention on the low initial monthly payments or interest rates.

21.     Countrywide, through its loan pricing structure, encouraged brokers to place homeowners in loans with interest rates higher than those for which they qualified, as well as prepayment penalty obligations. This system of compensation aided and abetted brokers in breaching their fiduciary duties to borrowers by inducing borrowers to accept unfavorable loan terms without full disclosure of the borrowers' options and also compensated brokers beyond the reasonable value of the brokerage services they rendered.

22.     Defendants' deceptive scheme had one primary goal-to supply the secondary market with as many loans as possible, ideally loans that would earn the highest premiums. Countrywide

retained ownership of some of the loans it originated, it sold the vast majority of its loans on the secondary market, either as mortgage-backed securities or as pools of whole loans.

23.     Countrywide deceptively marketed ARMs by aggressively promoting the teaser rate. Television commercials emphasized that the payment rate could be as low as 1 % and print advertisements lauded the extra cash available to borrowers because of the low minimum payment on the loan. Television advertisements did not effectively distinguish between the "payment rate" and the interest rate on the loans, and any warnings about potential negative amortization in Countrywide's print advertisements were buried in densely written small type.

24.     A Deed of Trust was recorded in the Official Records of Los Angeles County on August 12, 2005. The Deed of Trust lists Daniel Dwayne Gordey as the borrower; Countrywide Bank, a division of Treasury Bank, N.A. as lender, Recontrust as the Trustee and MERS as a nominee for lender and lender's successors and assigns. The amount was listed as $825,000. The Deed of Trust included an Adjustable Rate Rider which included a negative 115% amortization, a teaser rate of 1.375% and a 1-4 family rider. (Exhibit A)

25.     Predatory loans such as Plaintiff's were banned in California in 2009. Payments on negative amortization loans are not enough to cover the interest and are added to the loan balance. Every time a payment is made on a negative amortization loan, the balance increases.

26.     Plaintiff is informed and believes that thereon alleges that a representative of Countrywide stepped outside the typical role of lender in recommending the particular loan was the most suitable and making assurance that the lender was acting in the best interests of Plaintiffs. Such representations were intended to and did create trust reliance on the part of Plaintiffs. The misrepresentations were intentionally designed to induce Plaintiffs into an unconscionable contract for the sole benefit of Countrywide and its agents. The only initial monthly payment amount that

7

appeared anywhere in his loan documents was the minimum payment amount. In other words, documents provided assumed he would make only the minimum payment. Thus, Plaintiff did not know the monthly payment necessary to make a payment that would, for example, cover accruing interest, until he or she received the first statement after the expiration of the teaser rate, well after all loan documents were signed.

27.     Countrywide misrepresented the true terms of the ARM including, but not limited to, misrepresenting the amount of time that the interest rate would be fixed, misrepresenting the risk of negative amortization and misrepresenting that the payment rate was not the interest rate and how the payments would apply for the life of the loan. The teaser interest rate showed an artificial payment schedule. Plaintiff's actual interest rates and monthly payments sufficient to amortize the loan were hidden in the complexity of the contract terms.

28.     Countrywide misrepresented how difficult it would be to refinance or modify the ARM-negative amortization loan. Countrywide knew the dangers of the loans they were selling, in particular the near certainty that payment shock would occur and the negative amortizing loan would be useless to refinance. Plaintiff relied on the misrepresentations and nondisclosures and would not have entered the transaction but for the misrepresentations and nondisclosures.

29.     Driven by its push for market share, Countrywide did whatever it took to sell more loans, faster -including by easing its underwriting criteria and disregarding the minimal underwriting criteria it claimed to require. Countrywide deceptively marketed the ARM by aggressively promoting the teaser rate through advertisements to the public without disclosing the risks.

30.     BANA acquired and is the successor to Countrywide Financial Corporation and Countrywide Financial Corporation and Countrywide Home Loan, Inc. On July 1, 2008 Countrywide merged with BANA and became a wholly-owned subsidiary of BANA. Countrywide's remaining

operations and employees were transferred to BANA and BANA ceased using the Countrywide name in April 2009.

31.     Since acquiring Countrywide, BANA has settled with the Securities and Exchange Commission (SEC) in 2010, over allegations that Countrywide charged excessive fees to homeowners facing foreclosure. In 2011 BANA agreed to pay $355 million to settle claims that Countrywide used discriminatory lending practices.  In February 2012 BANA consented to a $25 billion settlement with the federal government and state attorneys general to resolve allegations of loan servicing and foreclosure abuses. The New York Attorney General later sued BANA for breaching the terms of the foreclosure settlement.

32.     Plaintiff complied with his obligations by executing and submitting all required documentation, answering all questions truthfully, keeping his representations true and accurate. BANA has knowingly established a system designed to wrongfully deprive its eligible borrowers of an opportunity to modify their mortgages, pay their loans, and save their houses from foreclosure. Bank of America's actions, which serve only its interest in extracting as much money as possible from borrowers it deems are at risk of default, thwart every attempt at modification, and amount to immoral, unlawful, and unfair business practices under California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL").

33.     The purpose of the American Recovery and Reinvestment Act of 2009 is to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system and ensure that such authority is used in a manner that "protects home values" and "preserves homeownership.

34.     Plaintiff applied over and over for several years for a loan modification and each time he was not provided relief from the predatory terms. Countrywide placed Plaintiff in a position creating a

need for a loan modification and did not properly negotiate or process the applications. The transaction was unquestionably intended to affect Plaintiff. The decision on Plaintiff's loan modification determines whether or not his house is taken from him.

35.     To help run its modification program, BANA relied on managers who had worked at Countrywide Financial Corp., the subprime lender it took over in 2008. Those executives created and enforced quotas for resolving complaints, according to the former employees. Among them was Rebecca Mairone liable by a federal jury for defrauding government-backed housing companies Fannie Mae and Freddie Mac while working at Countrywide.

36.     On August 30, 2012, an Assignment of Deed of Trust was recorded in the Official Records of Los Angeles County wherein MERS assigns the subject Deed of Trust to The Bank of New York as trustee of CWALT, Inc., Alternative Loan Trust 2005-56. This Assignment took place seven (7) years after the securitized trust closed. (Exhibit B)

37.     In 2012, BANA offered principal reductions to borrowers as part of the $25 billion settlement reached between the federal and state agencies and the five largest mortgage servicers (Bank of America included) over fraudulent foreclosure document processing. To qualify the borrower must be 60 days late on mortgage payment as of January 31, 2012, and owe more than the home is worth. Bank of America was to bring the monthly mortgage payment down 25 percent of the borrower's gross income. The amount of principal reduction could be over $100,000 and there is no limit to the amount of the mortgage.

38.     Beginning on November 17, 2012, BANA transferred the servicing of the mortgage to Select Portfolio Servicing, Inc. (SPS).

39.     On March 7, 2014, a Substitution of Trustee was recorded wherein The Bank of New York Mellon, as trustee, substitutes Quality Loan Service Corporation as substituted trustee. (Exhibit C)

40.     On March 11, 2014, a Notice of Default was recorded in the Official Records of Los Angeles County by Quality for The Bank of New York Mellon, as trustee for the securitized trust. The 2923.55 Declaration stats that Select Portfolio Servicing, Inc., (SPS) had explored options for the borrower to avoid foreclosure. Plaintiff disputes that SPS had tried to explore any viable options to avoid foreclosure due to aspects of the predatory loan which was a defective product sold by Countrywide. Plaintiff's efforts and expense of submitting documents for a loan modification were in vain. (Exhibit D)

41.     On June 16, 2014, a Notice of Trustee's Sale was recorded in the Official Records of Los Angeles County by Defendant Quality stating "unless you take action to protect your property, it may be sold at public sale." Plaintiff had been trying to take action to avoid foreclosure, but had been blocked from options by virtue of the defective product that was sold to him. (Exhibit E)

42.     If BANA had not sold a defective product and BANA and SPS had properly given Plaintiff a principal loan modification, there would be no issue today. It is through BANA and SPS's wrongful actions that a chain of events was set into motion. Plaintiff had asked for assistance and BANA and SPS ignored his requests. Plaintiff is being deprived the possibility of obtaining the requested relief and injury is certain.

43.     BANA's casual disregard for its own customers is also indicative of the larger trend of banks going right back to the same old profits-above-people attitude that helped precipitate the 2008 financial crisis. The existence of public policy of preventing future harm to home owners is shown by

recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis.

## FIRST CAUSE OF ACTION

### Intentional Misrepresentation Against All Defendants

44.     Plaintiff incorporate herein by reference the allegations made in paragraphs above as though fully set forth herein.

45.     Elements: "(1) [T]he defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." (*Manderville v. PCG & S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1498.)

46.     Countrywide misrepresented how difficult it would be to refinance or modify the ARM-negative amortization loan. Countrywide knew the dangers of the loans they were selling, in particular the near certainty that payment shock would occur and the negative amortizing loan would be useless to refinance. Plaintiff relied on the misrepresentations and nondisclosures and would not have entered the transaction but for the misrepresentations and nondisclosures.

47.     BANA expressly, intentionally and knowingly misrepresented that if Plaintiff provided the documentation requested they would honestly review him for a loan modification. Plaintiff relied on this information and spent countless hours in repeatedly submitting and resubmitting paperwork for loan modifications when Defendants had no intention of ever honestly considering him for a loan modification, let alone ever granting Plaintiff a loan modification.

PLAINTIFF'S VERIFIED COMPLAINT

48.     Plaintiff justifiably relied on these material misrepresentations, provided all documentation as requested and kept his representations true and correct. Had Plaintiff known that BANA and SPS would improperly refuse to modify his loan, he would not have engaged in great efforts to save his home. Notwithstanding Plaintiff's reliance, BANA failed to honor its promise to modify Plaintiff's loan. Instead BANA's conduct and refusal to modify Plaintiff's loan despite Plaintiff's full compliance is part of a broader scheme to extract as much money as possible from distressed homeowners. As part of this scheme, BANA strings borrowers along for several months and inevitably denies loan modifications without sufficient justification.

49.     BANA intentionally failed to adhere to basic standards of competence and diligence in the hope that borrowers will become too frustrated to challenge its arbitrary reevaluations and denials. As a further frustration, BANA then passed the loan servicing to SPS so that Plaintiff would have no protections offered by the government and Plaintiff would have to start the process all over again.

50.     BANA employed personnel to process loan modifications without sufficient experience or training as part of its effort to confuse and frustrate borrowers such as Plaintiff.

51.     BANA transferred the subservicing rights to SPS to further intimidate and frustrate Plaintiff. BANA still holds the mortgage in a securitized trust and will still profit while Plaintiff will be prejudiced by having to deal with a servicer that does not have to comply with National settlement agreements.

52.     As a result of this unlawful and unfair pattern and practice, Plaintiff has suffered damages as set forth above.

///

///

///

PLAINTIFF'S VERIFIED COMPLAINT

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation Against All Defendants

53.     Plaintiff incorporates BANA herein by reference the allegations made in paragraphs above as though fully set forth herein.

54.     The elements of negligent misrepresentation under California law are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."

55.     Plaintiff is informed and believes and thereon alleges that a representative of Countrywide stepped outside the typical role of lender in recommending the particular loan was the most suitable and making assurance that the lender was acting in the best interests of Plaintiff. Such representations were intended to and did create trust reliance on the part of Plaintiff. The misrepresentations were intentionally designed to induce Plaintiff into an unconscionable contract for the sole benefit of Countrywide and its agents.

56.     Countrywide misrepresented the true terms of the ARM including, but not limited to, misrepresenting the amount of time that the interest rate would be fixed, misrepresenting the risk of negative amortization and misrepresenting that the payment rate was not the interest rate and how the payments would apply for the life of the loan. The teaser interest rate showed an artificial payment schedule. Plaintiff's actual interest rates and monthly payments sufficient to amortize the loan were hidden in the complexity of the contract terms.

57.     Countrywide misrepresented how difficult it would be to refinance or modify the ARM-negative amortization loan. Countrywide knew the dangers of the loans they were selling, in particular

PLAINTIFF'S VERIFIED COMPLAINT

the near certainty that payment shock would occur and the negative amortizing loan would be useless to refinance.

58.     The conduct of Countrywide constituted predatory lending practices, including loan steering, negative amortization, excessive fees and costs without consideration of the borrower's ability to repay.

59.     BANA agreed to be the party responsible for providing relief as a result of their acquisition of Countrywide.

60.     BANA and SPS expressly, intentionally and knowingly misrepresented that if Plaintiff provided the documentation requested they would honestly review him for a loan modification. Plaintiff relied on this information and spent countless hours in repeatedly submitting and resubmitting paperwork for loan modifications when Defendants had no intention of ever honestly considering him for a loan modification, let alone ever granting Plaintiff a loan modification.

61.     Quality performed foreclosure related activities despite promises that Plaintiff would be properly reviewed for a loan modification before engaging in foreclosure activities. Quality was a necessary party instrumental to the wrongfully recorded documents.

62.     Plaintiff justifiably relied on these material misrepresentations, provided all documentation as requested and kept his representations true and correct. Had Plaintiff known that BANA and SPS would improperly refuse to modify his loan, he would not have engaged in great efforts to save his home.

## THIRD CAUSE OF ACTION

### Violation of Duty Of Good Faith And Fair Dealing Against All Defendants

63.     Plaintiff hereby re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

15

64.     Countrywide misrepresented the true terms of the ARM including, but not limited to, misrepresenting the amount of time that the interest rate would be fixed, misrepresenting the risk of negative amortization and misrepresenting that the payment rate was not the interest rate and how the payments would apply for the life of the loan. The teaser interest rate showed an artificial payment schedule. Plaintiff's actual interest rates and monthly payments sufficient to amortize the loan were hidden in the complexity of the contract terms.

65.     Countrywide misrepresented how difficult it would be to refinance or modify the ARM-negative amortization loan. Countrywide knew the dangers of the loans they were selling, in particular the near certainty that payment shock would occur and the negative amortizing loan would be useless to refinance.

66.     BANA has intentionally and continuously acted in a manner so as to frustrate Plaintiff's ability to obtain a modification of his mortgage. BANA has abused its discretion which require that it permanently modify its borrowers' mortgages.

67.     Only BANA has the ability to effectuate the modifications that it has promised to provide. BANA has abused its authority, frustrated its borrowers' ability to obtain the benefits and accordingly breached the implied covenant of good faith and fair dealing.

68.     By passing Plaintiff's servicing to SPS, Plaintiff was further prejudiced in his attempts to at loan modification. BANA is still profiting from the subservicing while keeping the master servicing rights via the securitized trust while the new subservicer has no obligation to abide by the settlement agreements.

PLAINTIFF'S VERIFIED COMPLAINT

69.     Quality performed foreclosure related activities despite promises that Plaintiff would be properly reviewed for a loan modification before engaging in foreclosure activities. Quality was a necessary party instrumental to the wrongfully recorded documents.

70.     As a result of BANA and SPS's breach, Plaintiff has suffered Damages to be proven at trial, including but not limited to being:

a.      Denied the value of the offer for permanent modification he should received in the form of lower monthly payments;

b.      Denied access to the Principal Reduction Alternative Program;

c.      Denied the opportunity to have his unpaid late fees waived;

d.      Reported improperly as having a series of delinquent payments to the credit bureaus once his modification was improperly denied and other damage to credit scores and ratings, including increasing the total cost of credit;

e.      Deprived of the opportunity to refinance his home, or seek other means to mitigate losses;

f.      Forced to send and re-send the bank documents including large packets of information, either via fax or mail, at the Plaintiff's expense, in response to BANA and SPS's routine claims of lost or outdated information;

g.      Subject to emotional distress caused by BANA dragging out the modification process, sending default letters, claiming to have never received documents, providing false justifications for denying a permanent modification

71.     As a result of this unlawful and unfair pattern and practice, Plaintiff has suffered damages as set forth above.

## THIRD CAUSE OF ACTION

### Promissory Estoppel Against BANA and SPS

72.     Plaintiff hereby re-alleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

73.     Plaintiff alleges Defendant made him promises without any intention of performing them.

74.     Restatement (Second) of Contracts §90 states that a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

75.     Had Plaintiff known that BANA and SPS would improperly refuse to modify his loan, he would not have engaged in great efforts to save his home. Notwithstanding Plaintiff's reliance, BANA failed to honor its promise to modify Plaintiff's loan. Instead BANA's conduct and refusal to modify Plaintiff's loan despite Plaintiff's full compliance is part of a broader scheme to extract as much money as possible from distressed homeowners. As part of this scheme, BANA and SPS string borrowers along for several months and inevitably denies loan modifications without sufficient justification.

76.     Defendant BANA and SPS did not work in good faith to modify Plaintiff's loan. Plaintiff spent fruitless hours spent trying to meet BANA and SPS's requests. These were fruitless hours as BANA and SPS never intended to modify. BANA and SPS was obligated to evaluate Plaintiff for a loan modification in good faith and failed.

77.     As a result of this unlawful and unfair pattern and practice, Plaintiff has suffered damages as set forth above.

18

## FOURTH CAUSE OF ACTION

**Violation of *Cal. Bus. & Prof. Code § 17200 et seq.* Against All Defendants**

78.     Plaintiff re-alleges and incorporates the above and below allegations as if set forth fully herein.

79.     The conduct of Countrywide constituted predatory lending practices, including loan steering, negative amortization, excessive fees and costs without consideration of the borrower's ability to repay and sold defective products to consumers.

80.     BANA then transferred servicing rights to SPS with intention to frustrate Plaintiff. Rushmore is not a party to the servicing settlements brought by state and federal regulators to protect consumers such as Plaintiff. This includes rules such as establishing a single point of contact or dual tracking. BANA sold the subservicing rights but has kept the master servicing rights. This means that BANA receives profits, while not having to comply with the settlements. This action has prejudiced Plaintiff by having to start all over with another servicer who is not monitored in its actions.

81.     BANA's conduct as described throughout this Complaint violates the UCL's fraudulent prong.

82.     BANA's conduct is unfair under the UCL. There is no benefit to society in allowing BANA to misled Plaintiff regarding his ability to obtain a loan modification or to have the opportunity to foreclose on Plaintiff who has fully complied with all requirements.

83.     Quality performed foreclosure related activities despite promises that Plaintiff would be properly reviewed for a loan modification before engaging in foreclosure activities. Quality was a necessary party instrumental to the wrongfully recorded documents.

84.     Plaintiff's lack of bargaining power coupled with conflicts of interest that exist in the modern loan servicing industry provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with regard to loan modification.

85.     The policy of preventing future harm strongly favors imposing a duty of care on the defendants. The California Legislature has expressed a strong preference for fostering cooperative relations between lenders and borrowers so that homes will not be lost.

86.     Taxpayers have funded a system designed to help borrowers save their homes and BANA and SPS's conduct is the antithesis of how a Servicer should act.

87.     BANA and SPS's conduct as described throughout this Complaint is substantially injurious to consumers and shouldn't be allowed to continue.

88.     Plaintiff alleges that improper handling of the loan modification applications deprived him of the opportunity to obtain a loan modification and would have received had his applications been properly reviewed and has deprived him the opportunity of relief elsewhere.

89.     As a result of this unlawful and unfair pattern and practice, Plaintiff has suffered damages as set forth above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment against Defendants as follows:

1.     For an order holding Defendants liable for their wrongful modification and mortgage practices and other violations, awarding Plaintiff compensation for all damages sustained in an amount to be proven at trial, including an award for past and future economic and compensatory damages, past and future non-economic, punitive and/or exemplary damages, and other damages;

2.     For declaratory and injunctive relief;

PLAINTIFF'S VERIFIED COMPLAINT

3.      For interest to be calculated at the maximum amount allowable by law, including pre- and post-judgment interest for damages;

4.      For reasonable attorney's fees;

5.      For reasonable costs of suit incurred; and

6.      For such other relief as this Court deems just and proper.

DATED: September 25, 2014          SAUNDERS LAW GROUP, LTD.


By: _____
        GARY SAUNDERS, ESQ.
        Attorney for Plaintiff
        DANIEL DWAYNE GORDEY

PLAINTIFF'S VERIFIED COMPLAINT

## AFFIDAVIT AND VERIFICATION
### (Civ. Proc. Code § 2015.5)

I, DANIEL DWAYNE GORDEY, an individual Plaintiff in the above-entitled action against Defendants BANK OF AMERICA, NATIONAL ASSOCIATION; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-56, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-56; QUALITY LOAN SERVICE CORPORATION; SELECT PORTFOLIO SERVICING, INC; and DOES 1 – 10.

I have read the foregoing verified complaint and know the contents thereof. I certify that the same is true to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances.

This lawsuit is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

1   DATED: 9/24/2014

2   _Daniel Dwayne Gordey_
    DANIEL DWAYNE GORDEY

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

# EXHIBIT A

Branch :RO3,User :3496 _____ Comment: _____ Station Id :F7WF

*OLD REPUBLIC*
*2607039201-55*                    08/12/05

Recording Requested By:
M. MCLAURIN

05 1935035

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
REBECCA GARCIA

*7534-33-049*          [Space Above This Line For Recording Data]

0457002222                    00011158580008005
[Escrow/Closing #]              [Doc ID #]

# DEED OF TRUST

MIN 1001337-0000858970-0

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 09, 2005 , together with all Riders to this document.

(B) "Borrower" is
DANIEL DWAYNE GORDEY, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16

-6A(CA) (0207)    CHL (09/02)(d)    VMP MORTGAGE FORMS - (800)521-7291        Initials:        Form 3005 1/01
CONV/VA

* 2 3 9 9 1 *                    * 1 1 1 5 8 6 8 0 0 0 0 0 0 0 0 1 0 0 6 A *

Branch :RO3,User :3496                    Comment:                                    Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

Borrower's address is
133 CONVENT COURT, SAN RAFAEL, CA 94904
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
Countrywide Bank, a Division of Treasury Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
**(D) "Trustee"** is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated AUGUST 09, 2005     . The Note states that Borrower owes Lender
EIGHT HUNDRED TWENTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 825,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 01, 2035     .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

[logo] -6A(CA) (0207)          CHL (09/02)              Page 2 of 16                          Initials [signature]
                                                                                             Form 3005  1/01

05 1935035

Branch:RO3,User :3496          Comment:                    Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY          of          LOS ANGELES          :
          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 7534-033-049                    which currently has the address of
                    24719 VIA VALMONTE,   TORRANCE
                              [Street/City]
California 90505-6826 ("Property Address"):
          [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)          CHL (09/02)          Page 3 of 16          Initials          Form 3005  1/01

05 1935035

Branch :RO3,User :3496          Comment:                                    Station Id :F7WF

08/12/05

DOC ID #: 0001115858008005

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)          CHL (09/02)          Page 4 of 16          Initials ___          Form 3005  1/01

05 1935035

Branch :RO3,User :3496                    Comment:                                    Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)        CHL (09/02)              Page 5 of 16                    Initials            Form 3005  1/01

05 1935035

Branch :RO3,User :3496                    Comment:                                      Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

    4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

    Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

    5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

    If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

    All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

-6A(CA) (0207)         CHL (09/02)              Page 6 of 16                    Initials: ___

                                                                              Form 3005   1/01

05 1935035

Branch :RO3,User :3496                    Comment:                                        Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

05 1935035

Branch :RO3,User :3496          ———          Comment:          ——|          Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials: _JDG_

-6A(CA) (0207)          CHL (09/02)          Page 8 of 16          Form 3005  1/01

65  1935035

Branch :RO3,User :3496          Comment:          Station Id :F7WF

08/12/05

DOC ID #: 0011158580008005

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

05 1935035

Branch :RO3,User :3496 — Comment: — Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: DDG

-6A(CA) (0207)      CHL (09/02)      Page 10 of 16      Form 3005 1/01

05 1935035

Branch :RO3,User :3496          ____          Comment:          ____          Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (09/02)          Page 11 of 16          Initials: [initials]          Form 3005 1/01

05 1935035

Branch :RO3,User :3496        _____        Comment:                _____        Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

VMP -6A(CA) (0207)        CHL (09/02)            Page 12 of 16                 Initials: _____        Form 3005  1/01

05 1935035

Branch :RO3,User :3496                    Comment:                                        Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Initials: _____

-6A(CA) (0207)          CHL (09/02)          Page 13 of 16          Form 3005  1/01

G5 1935035

Branch :RO3,User :3496                    Comment:                              Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)        CHL (09/02)            Page 14 of 16                  Initials _____    Form 3005 1/01

05 1935035

08/12/05

DOC ID #: 00011158580008005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     *Daniel Dwayne Gordy*                    (Seal)
                                  DANIEL DWAYNE GORDBY                    -Borrower

_____     _____    (Seal)
                                                                         -Borrower

                                  _____    (Seal)
                                                                         -Borrower

                                  _____    (Seal)
                                                                         -Borrower

-6A(CA) (0207)        CHL (09/02)          Page 15 of 16              Form 3005  1/01

65 1935035

Branch :RO3,User :3496       Comment:       Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

State of California
County of Marin   }ss.

On Aug 9, 2005    before me, Britt J. Rosenmayr    personally appeared

Daniel Dwayne Gorden

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



BRITT J. ROSENMAYR
Comm. # 1449514
NOTARY PUBLIC - CALIFORNIA
Marin County
My Comm. Expires Nov. 4, 2007

-6A(CA) (0207)    CHL (09/02)    Page 16 of 16    Initials DDG    Form 3005 1/01

05 1935035

Branch :RO3,User :3496                        Comment:                                    Station Id :F7WF

08/12/05

ORDER NO. : 2607039201-55

# EXHIBIT A

The land referred to is situated in the County of Los Angeles, City of Torrance, State of California, and is described as follows:

Lots 13 and 14 in Block 14 of Walteria Tract, in the City of Torrance, County of Los Angeles, State of California, as per map recorded in Book 17 Pages 55 and 56 of Miscellaneous Records, in the office of the County Recorder of said County.

Together with that portion of Mesa Street, (now known as De Las Tortugas) lying Northeasterly of said land, as vacated by Resolution No. 65-122 by the City Council of the City of Torrance, and recorded June 25, 1965 as Instrument No. 5301.

Except those portions of said lots lying Southwesterly of the Northeasterly line of Hawthorne Avenue 60 feet wide as described in the Deed of the County of Los Angeles, recorded in Book 3423 Page 372, Official Records.

05 1935035

Branch :RO3,User :3496                    Comment:                                    Station Id :F7WF

08/12/05

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

0457002222                    0001115B580008005
[Escrow/Closing #]              [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this NINTH                    day of
AUGUST, 2005          , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Countrywide Bank, a Division of Treasury Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and
located at.

24719 VIA VALMONTE
TORRANCE, CA 90505-6826
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

• **PayOption MTA ARM Rider**
**1E310-XX (12/04)(d)**                    Page 1 of 6





65 1935035

Branch :RO3,User :3496                    Comment:                              Station Id :F7WF

08/12/05

DOC ID #: 0001115858000

## 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     1.375 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first             day of OCTOBER, 2005       , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding            TWO & 95/100  percentage point(s) (     2.950 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than      9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the FIRST             day of each month beginning on October, 2005       . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  SEPTEMBER 01, 2035    , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

* PayOption MTA ARM Rider
1E310-XX (12/04)                    Page 2 of 6

65  1935035

Branch':RO3,User :3496      Comment:      Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of
US $ 2,798.02      , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the
first      day of OCTOBER, 2006      , and on that day every 12th
month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment
which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If
the Minimum Payment is not sufficient to cover the amount of the interest due then negative
amortization will occur.
I will pay the amount of my new Minimum Payment each month beginning on each Payment
Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of
the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe
at the Payment Change Date in full on the maturity date in substantially equal payments at the interest
rate effective during the month preceding the Payment Change Date. The result of this calculation is
called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment
effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly
payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the
Principal and interest payment and does not apply to any escrow payments Lender may require under
the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my
Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or
3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the
Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly
payment.

• **PayOption MTA ARM Rider**
**1E310-XX (12/04)**      Page 3 of 6

65 1935035

Branch :RO3,User :3496                    Comment:                              Station Id :F7WF

08/12/05

DOC ID #: 0001115858000 8005

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A)

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options;

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

\* **PayOption MTA ARM Rider**
**1E310-XX (12/04)**                    Page 4 of 6

65 1935035

Branch :RO3,User :3496                    Comment:                              Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial Interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

**• PayOption MTA ARM Rider**
**1E310-XX (12/04)**                    Page 5 of 6

05 1955035

Branch :RO3,User :3496                    Comment:                              Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

DANIEL DWAYNE GORDEY                                          -Borrower

_____             -Borrower

_____             -Borrower

_____             -Borrower

° PayOption MTA ARM Rider
1E310-XX (12/04)                    Page 6 of 6

05 1935035

Branch :RO3,User :3496                    Comment:                                        Station Id :F7WF

08/12/05

# 1-4 FAMILY RIDER
## (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
REBECCA GARCIA


                    0457002222          00011158580008005
                    [Escrow/Closing #]       [Doc ID #]



**MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 1 of 5
VMP-57R (0411)      CHL (11/04)(d)                    Initials: DDG
                    VMP Mortgage Solutions, Inc. (800)521-7291        Form 3170 1/01



* 2 3 9 9 1 *            * 1 1 1 5 8 5 8 0 0 0 0 0 0 0 0 1 0 5 7 R *


                                        05 1935035

Branch :RO3,User :3496                    Comment:                                    Station Id :F7WF

**08/12/05**

DOC ID #: 00011158580008005

THIS 1-4 FAMILY RIDER is made this NINTH day of AUGUST, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide Bank, a Division of Treasury Bank, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
24719 VIA VALMONTE, TORRANCE, CA 90505-6826

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Initials: XX

VMP -57R (0411)        CHL (11/04)        Page 2 of 5        Form 3170 1/01

05  1935035

Branch :RO3,User :3496                   Comment:                               Station Id :F7WF

**08/12/05**

DOC ID #: 00011158580008005

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph

Initials: _____

**-57R (0411)**       **CHL (11/04)**       Page 3 of 5       **Form 3170 1/01**

05 1935035

Branch :RO3,User :3496                    Comment:                                Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument

-57R (0411)      CHL (11/04)        Page 4 of 5                    Initials: _____
                                                                  Form 3170 1/01

05 1935035

Branch :RO3,User :3496                    Comment:                                Station Id :F7WF

08/12/05

DOC ID #: 00011158580008005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_Daniel Dwayne Gordey_ _____ (Seal)
DANIEL DWAYNE GORDEY                               - Borrower

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

-57R (0411)      CHL (11/04)        Page 5 of 5                Form 3170 1/01

05 1935035

LOS ANGELES,CA
Document: TD 2005.1935035

Page 28 of 28

Printed on 9/19/2014 2:41:15 PM

# EXHIBIT B

Branch :RO3,User :3496          Comment:                          Station Id :F7WF

**This page is part of your document - DO NOT DISCARD**



## 20121303603



Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/30/12 AT 02:28PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201208300850064

00006352246



004241746

**SEQ:
01**

**ERDS - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**          E13

Branch :RO3,User :3496          Comment:                                        Station Id :F7WF

Recording Requested By:
Bank of America
Prepared By:  Diana De Avila
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID#       11311158580012270

Property Address:
24719 Via Valmonte
Torrance, CA 90505-6826

CAG-ADT  19678545  E  8/27/2012

This space for Recorder's use

MIN #: 1001337-0000858970-0          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST  2005-56, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-56** whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **COUNTRYWIDE BANK, A DIVISION OF TREASURY BANK, N.A.** |
| Original Borrower(s): | **DANIEL DWAYNE GORDEY, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY** |
| Original Trustee: | **RECONTRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **8/9/2005** |
| Original Loan Amount: | **$825,000.00** |

Recorded in Los Angeles County, CA on: 8/12/2005, book N/A, page N/A and instrument number 05 1935035

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**AUG 27 2012**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

Edward Gallegos Assistant Secretary

State of California
County of Ventura

On AUG 2 7 2012 before me, _____ Markus Hicks _____, Notary Public, personally appeared
_____ Edward Gallegos _____
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____ Markus Hicks _____          (Seal)
My Commission Expires: _____ February 12, 2015

MARKUS HICKS
Commission # 1925373
Notary Public - California
Los Angeles County
My Comm. Expires Feb 12, 2015

DocID#     11311158580012270

LOS ANGELES,CA
Document: AS 2012.1303603

Page 3 of 3

Printed on 9/19/2014 2:41:15 PM

# EXHIBIT C

EXHIBIT C

Branch :RO3,User :3496          Comment:                                        Station Id :F7WF

**This page is part of your document - DO NOT DISCARD**



# 20140236070



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/07/14 AT 08:00AM**

| | | |
|---|---|---|
| **FEES:** | | 21.00 |
| **TAXES:** | | 0.00 |
| **OTHER:** | | 0.00 |
| **PAID:** | | 21.00 |



**L E A D S H E E T**



201403070110011

00008935223



006070852

**SEQ:**
**14**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

Branch :RO3,User :3496                    Comment:                                    Station Id :F7WF



03/07/2014

*20140236070*

Recording requested by:

When recorded mail to:

Quality Loan Service Corporation
2141 5th Avenue
San Diego, CA 92101
619-645-7711

TS No.: CA-13-604299-JP                              Space above this line for recorders use
Order No.: 130251250-CA-MAI
APN. No.: 7534-033-049
MERS MIN No.: 1001337-0000858970-0MERS Telephone No. 1-888-679-6377

## Substitution of Trustee

WHEREAS, DANIEL DWAYNE GORDEY , A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY was the original Trustor, RECONTRUST COMPANY, N.A. was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, A DIVISION OF TREASURY BANK, N.A. was the original Beneficiary under that certain Deed of Trust dated 8/9/2005 and recorded on 8/12/2005 as Instrument No. 05 1935035,    of Official Records of LOS ANGELES County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE CORPORATION as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Branch :RO3,User :3496                    Comment:                              Station Id :F7WF

TS No.: **CA-13-604299-JP**
Page 2

Dated this ___25th___ day of __February__ __2014__

Bank of New York Mellon, f/k/a The Bank of New York, as
trustee, on behalf of the holders of the Alternative Loan Trust
2005-56, Mortgage Pass-Through Certificates, Series 2005-56,
by Select Portfolio Servicing, Inc. as Attorney In Fact

By: _____ 2/25/14

**MERLOBEL CUSTODIO**
**Document Control Officer**

State of: <u>Utah</u>)

County of: <u>Salt Lake</u>)

On this ___25___ day of __FEB__, 20 _14_, before me personally
appeared __MERLOBEL CUSTODIO__ proved on the basis of satisfactory evidence to be the
person whose name is subscribed to this instrument, and acknowledged that he executed the same.

Witness my hand and official seal.

✳ DOC. CONTROL OFFICER

**CHRISTIAN VALIENTE**
Notary Public State of Utah
My Commission Expires on:
**August 23, 2017**
Comm. Number: 669739

# EXHIBIT D

Branch :RO3,User :3496                   Comment:                                    Station Id :F7WF

**This page is part of your document - DO NOT DISCARD**



## 20140244801



Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**03/11/14 AT 08:00AM**

Pages:
0005

| | |
|---|---|
| FEES: | 34.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 34.00 |



LEADSHEET



201403111010001

00008943067



006074591

SEQ:
06

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

Branch :RO3,User :3496 _____ Comment: _____ Station Id :F7WF

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corporation
2141 5th Avenue
San Diego, CA 92101

03/11/2014
*20140244801*

TS No.: CA-13-604299-JP
Order No.: 130251250-CA-MAI
APN No.: 7534-033-049

Space above this line for Recorder's use

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code § 2923.3)
注：本文件包含 一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days prior to
the date set for the sale of your property.  No sale date may be set until approximately 90 days
from the date this Notice of Default may be recorded (which date of recordation appears on this
notice).  This amount is **$150,531.90** as of **3/7/2014** and will increase until your account becomes
current.

While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make
future payments on the loan, pay taxes on the property, provide insurance on the property, or pay
other obligations as required in the note and deed of trust or mortgage, the beneficiary or
mortgagee may insist that you do so in order to reinstate your account in good standing.  In
addition, the beneficiary or mortgagee may require as a condition of reinstatement that you
provide reliable written evidence that you paid all senior liens, property taxes, and hazard
insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization
of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your
account, even though full payment was demanded, but you must pay all amounts in default at the
time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in

Branch :RO3,User :3496          Comment:                    Station Id :F7WF

TS No.: CA-13-604299-JP                                                    *3*

' writing prior to the time the notice of sale is posted (which may not be earlier than three-months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the holders of the Alternative Loan Trust 2005-56, Mortgage Pass-Through Certificates, Series 2005-56**
**C/O Quality Loan Service Corporation**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **8/9/2005**, executed by **DANIEL DWAYNE GORDEY , A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, A DIVISION OF TREASURY BANK, N.A.**, as beneficiary, recorded **8/12/2005**, as Instrument No. **05 1935035**,     of Official Records in the Office of the Recorder of **LOS ANGELES** County, California describing land therein:  **as more fully described in said Deed of Trust.**

Said obligations including **1** NOTE(S) FOR THE ORIGINAL sum of **$825,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The installments of principal and interest which became due on 12/1/2011, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums**

Branch :RO3,User :3496                    Comment:                              Station Id :F7WF

TS No.: **CA-13-604299-JP**                                                                4

that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Pursuant to the attached Declaration, the mortgage servicer declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.55 or § 2923.5, or is otherwise exempt from the requirements of § 2923.55 and §2923.5.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated: 3/07/2014                    Quality Loan Service Corp., Trustee

                                    By: Yiheli Beltran, Assistant Secretary

Branch :RO3,User :3496       Comment:       Station Id :F7WF

## CALIFORNIA DECLARATION OF COMPLIANCE
### (CAL.CIV.CODE § 2923.55(c))

Loan Number:    0014378848

Borrower Name:    DANIEL GORDEY

Address:    24719 VIA VALMONTE, TORRANCE, CA 90505

Beneficiary:    Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the holders of the Alternative Loan Trust 2005-56, Mortgage Pass-Through Certificates, Series 2005-56

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that

1) [X] On 10/08/2013 contact was made with the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2)

2) [ ] On _____ the due diligence efforts were satisfied. No contact was made with the borrower despite the due diligence of beneficiary or their authorized agent pursuant to California Civil Code § 2923.55(f)

3) [ ] The borrower has surrendered the secured property as evidenced by a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, their authorized agent or the trustee pursuant to California Civil Code §2920.5(c).

4) [ ] The beneficiary or their authorized agent has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case pursuant to California Civil Code §2920.5(c).

5) [ ] The provisions of California Civil Code §2923.55 do not apply because the property is not owner occupied as defined by California Civil Code §2924.15.

The undersigned instructs the trustee to proceed with non-judicial foreclosure proceedings and expressly authorizes the trustee or their authorized agent to sign the notice of default containing the declaration re: contact required pursuant to California Civil Code §2923.5.

Dated:      **NOV 2 8 2013**

By: _____

Select Portfolio Servicing, Inc. as authorized agent of Beneficiary

Jillian Jones-Peacock
Document Control Officer

# EXHIBIT E

Branch :RO3,User :3496          Comment:                          Station Id :F7WF



**This page is part of your document - DO NOT DISCARD**



# 20140622032



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/16/14 AT 03:07PM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201406160980062

00009294201

006243449

**SEQ:**
**02**

**ERDS - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**          E12

LOS ANGELES,CA
Document: NT 2014.622032          Page 1 of 3          Printed on 9/19/2014 2:41:16 PM

Branch :RO3,User :3496                    Comment:                         Station Id :F7WF

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corporation
2141 5th Avenue
San Diego, CA 92101

---

TS No.  CA-13-604299-JP
Order No.: 130251250-CA-MAI

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 8/9/2005.  UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this
state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or
implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by
the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the
Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the
initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on
the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):      **DANIEL DWAYNE GORDEY , A MARRIED MAN AS HIS SOLE AND SEPARATE
                 PROPERTY**
Recorded:        8/12/2005 as Instrument No. 05 1935035    of Official Records in the office of the Recorder
                 of LOS ANGELES County, California;

Date of Sale:    7/14/2014 at 11:00 AM
Place of Sale:   By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766
Amount of unpaid balance and other charges: **$964,581.62**
The purported property address is:    24719  VIA VALMONTE, TORRANCE, CA 90505
Assessor's Parcel No.: 7534-033-049

---

TS No.: **CA-13-604299-JP**

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site http://www.qualityloan.com, using the file number assigned to this foreclosure by the Trustee: **CA-13-604299-JP**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Date: 6/13/2014

**Quality Loan Service Corporation**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711 For NON SALE information only**
**Sale Line: 714-730-2727**
**Or Login to: http://www.qualityloan.com**
**Reinstatement Line: (866) 645-7711 Ext 5318**

*Daisy Rios*

Quality Loan Service Corp. by: Daisy Rios, as Authorized Agent.